**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **Karl Von Batten,** *Dr.* | ) ) ) ) | |
| **Plaintiff,** | ) ) ) | |
| **v.** | ) ) | **Case No. 25-cv-03347 (APM)** |
| **GREY TEAM, INC., et al.,** | ) ) ) | |
| **Defendants.** | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

### I.

Defendants Grey Team, Inc., Dante Croupe, and Cary Reichbach move to dismiss pro se Plaintiff Karl Von Batten's complaint, which asserts claims of (1) "extortion/attempted extortion," (2) intentional infliction of emotional distress, (3) tortious interference with business relations, and (4) fraud. Defs.' Mot. to Dismiss, ECF No. 6 [hereinafter Defs.' Mot.]; Compl., ECF No. 1 [hereinafter Compl.], at 9–10 (CM/ECF pagination). For the reasons explained below, the motion is granted in part and denied in part.

### II.

Plaintiff is a resident of the District of Columbia. Compl. at 7, ¶ 2. His claims arise out of a $100,000 donation that he pledged to Grey Team during an "America First Gala" held at the Mar-a-Lago resort on December 12, 2024. *Id.* at 8, ¶¶ 7–8. According to Plaintiff, he made the pledge "under the reasonable belief that the 'America First Gala' was a political fundraising event affiliated with then-presidential candidate Donald J. Trump or an authorized political action committee ('PAC') supporting him." *Id.* at 8, ¶ 8.1. In truth, Grey Team is a Florida non-profit

dedicated to providing support and services for military veterans, and the event at Mar-a-Lago was held to raise money for its one its programs. *Id.* at 8, ¶ 6; Defs.' Mot. at 1.

When Plaintiff refused to make good on his pledge, Grey Team tried to collect. On January 20, 2025, Reichbach left Plaintiff a voicemail on his business phone in the District of Columbia, stating he would report Plaintiff to Mar-a-Lago "as someone who is no longer welcome" if he did not pay. Compl. at 8, ¶ 11; Pl.'s Opp'n to Defs.' Mot., ECF No. 9 [hereinafter Pl.'s Opp'n], Exs., ECF No. 9-1 [hereinafter Pl.'s Exs.], at 1 (CM/ECF pagination). Plaintiff viewed the voicemail as a threat to harm his reputation. Compl. at 8, ¶ 11. Then, on March 29, 2025, Croupe sent Plaintiff an email suggesting he would start reaching out to Plaintiff's contacts if he did not pay at least a portion of the $100,000. *Id.* at 8, ¶ 12; Pl.'s Exs. at 3. The email included an image taken from Plaintiff's LinkedIn profile. Pl.'s Exs. at 3. Plaintiff also viewed this communication as a threat to harm his reputation. *See* Compl. at 8, ¶ 12.

On March 20, 2025, Grey Team filed a lawsuit against Plaintiff in Florida state court, seeking to collect the $100,000 pledge. Defs.' Mot. at 3. Eventually, in March 2026, Plaintiff deposited $113,496.74 into the state court registry, representing the pledged amount, interest, and court costs, and moved to dismiss the case based on that payment. *See* Pl.'s Notice of Intent to Continue Litigation Pursuant to the Court's May 13, 2026, Minute Order, ECF No. 20, ¶ 3; Defs.' Status Report in Resp. to Order of May 13, 2026, ECF No. 19 [hereinafter Defs.' Status Report], Ex. 1, ECF No. 19-1. On May 12, 2026, Grey Team moved to dismiss the Florida state court action against Plaintiff. Defs.' Status Report, Ex. 3, ECF No. 19-3. The Florida matter is now concluded. *See* Defs.' Status Report at 1.

### III.

Defendants offer two grounds for dismissal: (1) *forum non conveniens* and (2) the failure to state claims. The court takes these arguments in turn.

### A.

According to Defendants, the court should dismiss under the doctrine of *forum non conveniens* because the Circuit Court for the 15th Judicial Circuit in and for Palm Beach County—where Grey Team filed its suit—is the more appropriate venue to litigate this case. Defs.' Mot. at 3–4. Defendants' argument rests mainly on the pendency of the Florida suit, which was active when Defendants filed their motion. *See id.* at 3–6. It is no longer, thus undercutting much of Defendants' rationale for dismissal. Nevertheless, the court makes the relevant inquiry.

A court may decline to exercise jurisdiction pursuant to the doctrine of *forum non conveniens* only "in exceptional circumstances," *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504 (1947), and "[a] defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum," *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007). In deciding whether to dismiss, the court must determine (1) whether an adequate alternative forum exists and, if so, (2) whether the balance of private and public interest factors strongly favors dismissal. *Shi v. New Mighty U.S. Tr.*, 918 F.3d 944, 947 (D.C. Cir. 2019). "The court must balance the relevant private and public interest factors in light of the degree of deference the plaintiff's choice of forum deserves." *Id.* at 948. "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gilbert*, 330 U.S. at 508.

Here, Defendants have not carried their heavy burden.[1] The District of Columbia is Plaintiff's home forum, so that choice is assumed convenient and entitled to greater deference.

---

[1] There is no dispute that Florida state court is an available and adequate forum.

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981); *see also Shi*, 918 F.3d at 949.  Still, Defendants argue that such deference is not warranted here, because Plaintiff selected this forum for "tactical advantage."  Defs.' Mot. at 3 (citing *Shi*, 918 F.3d at 950).  That argument holds no water.  A plaintiff's filing suit in their home forum because it is a more convenient place to litigate is a valid reason for its selection.  *See Piper Aircraft Co.*, 454 U.S. at 255–56.  Defendants' contention that Plaintiff has acted "tactically" rests largely on the inconveniences that this forum will pose to them.  *See* Defs.' Mot. at 5–6.  But that is simply a consequence of Plaintiff's appropriate selection of his home forum, not an attempt to gain an unfair litigation advantage.  *Cf. Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947) ("In any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown.").

The various private-interest factors slightly favor Florida as a forum, but not overwhelmingly.  Access to some evidence will be easier in Florida, as that is where the initial events occurred that led to the suit.  *See Shi*, 918 F.3d at 950.  But evidence also is accessible in the District to the extent it is in Plaintiff's possession.  Compulsory process is available through this court for any Florida-based witnesses for purposes of discovery, *see* Fed. R. Civ. P. 45(a), though process in Florida would have the added benefit of securing in-person trial testimony, *see id.* 45(c)(1).  *See Shi*, 918 F.3d at 950.  The cost of obtaining willing witnesses is unknown, as neither side has identified any third party that might have to bear the burden of traveling to the District.  *See id.*  Finally, the ease of enforcing a judgment favors Florida, as that is where Defendants likely have their assets.  *See id.*

As for the public-interest factors, they favor the District as a forum.  Defendants argue that this court is more congested than Florida's 15th Judicial Circuit, Defs.' Mot. at 4, but they offer

only anecdotal evidence, no statistics. *See Shi*, 918 F.3d at 952. District residents would not be inconvenienced by the burdens of jury service regarding a case that has no relationship to this jurisdiction. *See id.* After all, Plaintiff asserts that Defendants engaged in some tortious acts—those underlying the IIED and interference claims—that reached into the District and injured a District resident. For that same reason, there is a local interest in resolving what is in part a localized controversy. *See id.* Admittedly, a portion of the case arose in Florida—the alleged fraud that induced Plaintiff's $100,000 pledge presumably occurred there—but that fact does not make this case a wholly foreign one. Finally, insofar as choice of law, *see id.*, in moving to dismiss, Defendants rely only on District of Columbia law, Defs.' Mot. at 7–9, so maintaining the case here would not require this court to interpret and apply the law of a foreign jurisdiction.

On balance then, although the private-interest factors weigh slightly in favor of a Florida forum, the public-interest factors favor the District. And, in any event, taken collectively, those factors do not "strongly" outweigh Plaintiff's selection of his home forum. *Gilbert*, 330 U.S. at 508. Accordingly, the court declines to dismiss on grounds of *forum non conveniens*.

**B.**

Next, the court considers whether Plaintiff has stated plausible claims. In so doing, the court considers all of Plaintiff's filings, not just his complaint. *See Brown v Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) (per curiam) ("[A] district court errs in failing to consider a *pro se* litigant's complaint 'in light of' all filings, including filings responsive to a motion to dismiss."). Although a pro se complaint "must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks and citation omitted), it still "must plead 'factual matter' that permits the court to infer 'more than the mere possibility of [defendant's] misconduct,'" *Atherton v. D.C. Off.*

5

*of the Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).

Plaintiff's "extortion/attempted extortion" claim, Compl. at 9, fails out of the gate. There is no such cause of action under District of Columbia law. *See Fischer v. Est. of Flax*, 816 A.2d 1, 5 (D.C. 2003).

Plaintiff's IIED claim also must be dismissed. To sustain an IIED claim under District of Columbia law, "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Doe v. Columbia*, 151 F.4th 435, 452 (D.C. Cir. 2025) (internal quotation marks and citation omitted). Here, Plaintiff alleges little more than a run-of-the-mill fraud scheme, including strong-armed efforts to collect his pledge. Plaintiff cites no case holding that such allegations are "so extreme in degree" as to make out an IIED claim.

The court rules otherwise as to his fraud claim. The elements of common law fraud are "(1) a false representation (2) made in reference to a material fact, (3) with knowledge of its falsity, (4) with the intent to deceive, and (5) an action that is taken in reliance upon the representation." *Hercules & Co. v. Shama Rest. Corp.*, 613 A.2d 916, 923 (D.C. 1992). Defendants contend that Plaintiff fails to allege a "misrepresentation related to a material fact [and] that Defendants knew of the falsity of the material [fact]." Defs.' Mot. at 8. They also contend that Plaintiff makes "conclusory claims that he suffered damages." *Id.* at 8–9. But Plaintiff plausibly makes out these elements. He alleges that Defendants "cultivated" the false impression that the fundraiser a Mar-a-Lago was to support President Trump or a political action committee based on use of the phrase "'America First,' a slogan widely associated with President Trump, and by presenting misleading images and references that created the appearance that the event was politically affiliated." Compl.

6

at 8, ¶ 8.2.  Reading the complaint liberally, that is sufficient pleading of a materially false fact, and Defendants' knowledge can be reasonably inferred.  As for damages, Plaintiff has now paid the $100,000 he pledged.  In making that payment, he apparently did not waive claims against Defendants or make any admissions.  Defendants do not assert otherwise.  *See generally* Defs.' Status Report.  At this stage then, Plaintiff has sufficiently alleged an injury and a claim for fraud.[2]

Last, the tortious interference claim presents a closer call.  To make out that claim, Plaintiff must plead "(1) the existence of a valid contractual or other business relationship; (2) the defendant's knowledge of the relationship; (3) intentional interference with that relationship by the defendant; and (4) resulting damages."  *Close It! Title Servs., Inc. v. Nadel*, 248 A.3d 132, 141 (D.C. 2021) (cleaned up).  Defendants argue that Plaintiff fails to allege both "the existence of any contract or business relationship" and "any act to interfere with his business relationships."  Defs.' Mot. at 9.  The court agrees that, as pleaded, the claim falls short.  Plaintiff alleges, at most, that Reichbach and Croupe *threatened* to bring his refusal to pay to the attention of Mar-a-Lago and his business contacts, respectively.  Compl. at 8, ¶¶ 11–12.  He does not allege that either actually carried out the threat.  Moreover, in one of his filings, Plaintiff asserts that "Defendants' threats made Plaintiff unwilling to bring clients to Mar-a-Lago, a venue central to his lobbying practice." Pl.'s Surreply, ECF No. 14-1, at 2; *see also* Pl.'s Mot. for Leave to File Suppl. Decl., ECF No. 12, at 1–2 (asking to file a supplemental declaration to describe his "professional reluctance to bring clients to Mar-a-Lago").  But his mere unwillingness to take clients to Mar-a-Lago does not establish any actual injury to a business relationship.  Plaintiff has not alleged, for instance, that

---

[2] Plaintiff does not specify whether his fraud claim is against only Grey Team or all defendants.  *See* Compl. at 10. The court permits the fraud claim to go forward only as to Grey Team, as Plaintiff does not allege that either Croupe or Reichbach made any fraudulent representation to him.

Mag-a-Lago will not permit him to return or, if it has not, that any business relationship suffered as a result. His intentional interference claim therefore must be dismissed.

## IV.

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 6, is granted in part and denied in part. All but the fraud claim is dismissed.

Additionally, Plaintiff's Motion for Leave to Submit Health Information Under Seal, ECF No. 11, and Plaintiff's Motion for Leave to File Supplemental Declaration, ECF No. 12, are denied as moot. Plaintiff's Motion for Leave to File Surreply, ECF No. 14, is granted. The clerk of court shall docket the surreply filed at ECF No. 14-1. Additionally, the clerk of court shall publicly docket all of these filings, as their sealing is not warranted under *United States v. Hubbard*, 650 F.2d 293, 317–22 (D.C. Cir. 1980).

Dated: May 27, 2026

Amit P. Mehta
United States District Judge